IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MONONGALIA COUNTY COAL COMPANY

       Plaintiff,

v.                   //   CIVIL ACTION NO. 1:16CV04
                             (Judge Keeley)


UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION and
UNITED MINE WORKERS OF AMERICA, LOCAL UNION 1702

       Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]

Pending for consideration are cross motions for summary judgment filed by the plaintiff, Monongalia County Coal Company ("Company"), and the defendants, United Mine Workers of America, International Union and United Mine Workers of America, Local Union 1702 (collectively "Union"). Finding that the Arbitrator's decision fails to draw its essence from the collective bargaining agreement and instead reflects the Arbitrator's own notions of right and wrong, the Court grants the Company's motion (dkt. no. 15) and **VACATES** the Arbitrator's award.

### I. FACTUAL BACKGROUND

The Company operates the Monongalia County Mine (the "Mine"), an underground coal mine located in West Virginia and Pennsylvania. The Union represents the Company's bargaining unit (union) employees for purposes of collective bargaining. The Company and the Union are bound by a collective bargaining agreement ("CBA")

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

(dkt. no. 7-1) that governs the wages, hours, and working
conditions of union employees at the Mine.

In 2015, the Company contracted with a third-party, Jennchem,
to design, supply, and install a pumpable crib system[1] in the Mine.
This system requires workers to hang cylindrical bags from bolts
installed in the mine roof at predetermined locations. The bags are
then filled with a cementitious mixture, which dries quickly and
forms a strong concrete-like pillar that provides support to the
ceiling of the mine.

At the outset, union mine employees hung the bags and Jennchem
employees filled them with the cement mixture. After problems arose
with the bag hanging performed by the union employees, however, the
Company decided that, because of Jennchem's familiarity and
expertise with the product, Jennchem should perform the entire
operation. When the Union objected, the Company countered that it
was allowed to contract all of this work out to Jennchem under

---

[1] "Cribbing" is used to support the ceiling of a mine.
Traditionally, cribbing consisted of multiple layers of wood
stacked in a box-like formation from the ground to the roof. Modern
advances, however, have provided other forms of cribbing, including
hydraulics, mechanical jacks, or concrete-like pillars, such as
the ones at issue here.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

Article 1A, § (i) of the CBA.  This Article provides in pertinent

part as follows:

> All construction of mine or mine related facilities
> including the erection of mine tipples and the sinking of
> mine shafts or slopes customarily performed by classified
> Employees of the Employer normally performing
> construction work in or about the mine in accordance with
> prior practice and custom, shall not be contracted out at
> any time unless all such Employees with necessary skills
> to perform the work are working no less than 5 days per
> week, or its equivalent for Employees working alternative
> schedules.

(dkt. no. 14 at 4).

The Company justified its decision to contract out the bag

hanging to Jennchem based on the fact that, pursuant to Article 1A

§ (i), all union employees involved were working five days per

week. The Union disagreed, arguing that, because hanging the bags

was work previously performed by union workers, its members had

suffered a loss of work. After the parties were unable to resolve

the matter through the grievance process, the matter was referred

for resolution to Arbitrator Betty Widgeon ("Arbitrator").

**II. PROCEDURAL BACKGROUND**

On July 10, 2015, the Arbitrator conducted a hearing with the

parties at which the Company presented two arguments.  It first

contended that the installation of the pumpable crib bags was

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

construction work under Article 1A, § (i) of the CBA. It next asserted that, because the Mine's union employees were working no less than five days per week, it was free to contract that work to Jennchem. Although the Union did not dispute that its members were working no less than five days per week, it contended the work involved was "maintenance" work under Article 1A, § (g)(2),[2] which required the Company to use only union workers. Thus, it reasoned that, even if all union members were already working a full work schedule, the maintenance work would have resulted in overtime and additional payments into the employees' benefit fund.

---

[2]Article 1A, § (g)(2), provides in pertinent part:
Repair and Maintenance Work - Repair and maintenance work of the type customarily performed by classified Employees at the mine or central shop shall not be contracted out except (a) where the work is being performed by a manufacturer or supplier under warranty, in which case, upon written request on a job-by-job basis, the Employer will provide to the Chairman of the Mine Committee a copy of the applicable warranty or, if such copy is not reasonably available, written evidence from a manufacturer or a supplier that the work is being performed pursuant to warranty; or (b) where the Employer does not have available equipment or regular Employees (including laid-off Employees at the mine or central shop) with necessary skills available to perform the work at the mine or central shop.
Dkt. no. 14-1 at 4.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

The Arbitrator rendered a decision ("Decision") favorable to the Union on August 31, 2015. She found that the Company had violated the CBA by using Jennchem to complete bargaining unit work (dkt. no. 4). Specifically, her Decision concluded that the "installation of pumpable cribs does not fall into the construction exception, and because it is, at the very least, repair and maintenance work, it is Union work." Dkt. no. 4 at 4. The Decision also required the Company to cease and desist using outside contractors to hang the bags, and awarded the Union compensatory damages for the hours billed by Jennchem. Id.

Following the Decision, a dispute arose concerning the formula to be used in determining the amount of damages to be paid by the Company (dkt. no. 14-1). After additional briefing, the Arbitrator issued a Supplemental Decision, accepting the Union's position and basing her award of the hours due on the calculations and estimates supplied by the Union (dkt. no. 4-1). Accordingly, she ordered the Company to compensate the Union for 3,000 labor hours connected to the bargaining unit work performed by Jennchem. Id.

The Company filed suit against the Union on January 8, 2016 (dkt. no. 1). Its complaint challenges the Arbitrator's Decision on the basis that it 1) exceeded the scope of the Arbitrator's

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]

authority and power; 2) failed to draw its essence from the Agreement; 3) was based on the Arbitrator's own notions of right and wrong; 4) was arbitrary and capricious; and 5) conflicted with public policy interests by undermining enforcement of the Agreement. As a remedy, it sought to vacate the Arbitrator's award with prejudice.

The Union filed a combined answer and counterclaim on February 17, 2016, challenging the Court's jurisdiction to vacate the award because the Agreement provides for final and binding arbitration as the sole means of resolving disputes arising under the Agreement (dkt. no. 7). Its counterclaim seeks a declaration that the award is final, binding, and enforceable. It also asks the Court to compel enforcement of the award and to permanently enjoin the Company from utilizing third-party contractors in any manner inconsistent with the Agreement.

Both parties have moved for summary judgment (dkt. nos. 13 and 15), and those motions are fully briefed and ripe for review.

### III. LEGAL STANDARD

**A.    Summary Judgment**

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist sufficient to prevent judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the

evidence must be such that a rational trier of fact could reasonably find for the nonmoving party.  Id. at 248-52.

## B.   Judicial Review of Arbitration Awards

Judicial review of arbitration awards is "among the narrowest known to the law." PPG Indus. Inc. v. Int'l Chemical Workers Union Council of United Food and Comm'l Workers, 587 F.3d 648, 652 (4th Cir. 2009) (internal citations omitted). Arbitration awards are presumptively valid. Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). This is because the parties to a CBA "bargained for the arbitrator's interpretation and resolution of their dispute." Id. Consequently, courts generally defer to the arbitrator's reasoning and should not overturn their factual findings unless there has been fraud by the parties or dishonesty by the arbitrator. Id. Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." PPG Indus., 587 F.3d at 652 (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

Nevertheless, courts should overturn arbitration awards when the "award violates well-settled and prevailing public policy,

fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's own notions of right and wrong." Mountaineer, 76 F.3d at 608 (citing Misco, 484 U.S. at 38). Thus, an "arbitrator cannot 'ignore the plain language of the contract' to impose his 'own notions of industrial justice.'" PPG Indus., 587 F.3d at 652 (quoting Misco, 484 U.S. at 38).

A court's review "must determine only whether the arbitrator did his job — not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas, 76 F.3d at 608. This determination requires the Court to examine: "(1) the arbitrator's role as defined by the Agreement; (2) whether the award ignored the plain language of the Agreement; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the Agreement's proscribed limits." Id. (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)).

Moreover, when construing the contract, "the arbitrator must take into account any existing common law of the particular plant or industry, for it is an integral part of the contract." Clinchfield Coal Co. v. District 28, United Mine Workers of America & Local Union No. 1452, 720 F.2d 1365, 1368 (4th Cir. 1983)

(quoting <u>Norfolk Shipbuilding and Drydock Corp. v. Local No. 684 of the Int'l Brotherhood of Boilermakers</u>, 671 F.2d 797, 800 (4th Cir. 1982)). Finally, "[t]he 'basic objective' of a reviewing court in the arbitration context is 'to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties.'" <u>PPG Indus.</u>, 587 F.3d at 654 (quoting <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 947 (1995)).

## IV. DISCUSSION

The material facts in this case are not in dispute. The parties either agree or concede that the work of hanging the bags was previously performed by union employees, and that those employees were working no less than five days per week during the relevant time period. The Company assigns two legal errors to the Arbitrator's Decision. First, it asserts that the Decision ignores the plain language of the CBA, as well as the "common law of the shop." Second, it contends that the damages awarded in the Supplemental Decision are arbitrary and capricious, and based on her own sense of fairness or equity. The Union argues that, under the CBA, the parties agreed to be bound by the Arbitrator's decision, and further argues that legal precedent requires courts

MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]

to give arbitrators great deference and only overturn their awards in the most limited of circumstances, none of which they contend are present in this case.

## A.   The Arbitrator's Decision That The Work Was Not Construction

Cognizant of the very limited circumstances under which it may overturn an arbitration award, this Court still must do so if the award "fails to draw its essence from the collective bargaining agreement." Mountaineer Gas, 76 F.3d at 608. In determining whether the Arbitrator did her job, the Court must determine "whether the award ignored the plain language of the Agreement." Id.

The question presented is whether the work of hanging the bags was construction work or repair and maintenance work. Under the CBA, if the work was construction, the Company was free to contract it to Jennchem because union employees were working no less than five days per week. See Dkt. no. 14-1 at 5. If, however, the work was repair and maintenance, it belonged solely to the union employees, with limited exceptions that are not present in this case. See Dkt. no. 14-1 at 4. Because  union employees were working no less than five days per week, the Union contended that hanging the bags was repair and maintenance work.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

In order to determine whether the work was construction or maintenance, the Arbitrator necessarily had to construe the relevant language of the CBA, which does not explicitly categorize the work at issue. In support of its position, the Company submitted multiple prior arbitral decisions, which defined construction as "the creation of something new that had not existed before" (dkt. no. 4 at 4). Thus, "because the pumpable cribs were being erected and placed where there previously was nothing," the Company argued that "there is nothing to maintain" and the work "can only ever be viewed as construction." Id.

The entirety of the Arbitrator's reasoning rejecting this argument and concluding that the work was maintenance and repair work, not construction, is contained in a single paragraph of her Decision (dkt. no. 4 at 4). Disagreeing with the Company's characterization of the work, she found that, "[i]n the places where the pumpable cribs are being erected, there was previously something there: coal." Id. That coal "kept the ceiling of the mine from collapsing." Id. She credited the Union's argument that, "with the removal of the coal, various measures were put into effect to keep the ceiling stable and that the installation of these cribs was one of those measures." Id. The Arbitrator did not

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

"view[] each installation . . . as an individual construction project or even as a part of a larger construction project but as steps taken to maintain the integrity and stability of the mine ceiling." <u>Id.</u>

The words "construction" and "repair and maintenance" have distinct and clear definitions in the context of this case. To "construct" means "[t]o form by assembling or combining parts; build."[3] To "maintain," on the other hand, has two plausible definitions that could apply to this case: either "[t]o keep in an existing state; preserve or retain" or "[t]o keep in a condition of good repair or efficiency."[4] As the Company noted, and the arbitral precedent it cited confirms, in this context, the common usage of "repair and maintenance" refers to the upkeep of equipment,

_____

[3]<u>See</u>  <u>Construct</u>,  American  Heritage  Dictionary, https://ahdictionary.com/word/search.html?q=construct. Interestingly, Black's Law Dictionary (6th Ed. 1998) explicity differentiates between the two terms, as it defines "construct" thusly:

> To build; erect; put together; make ready for use. To adjust and join materials, or parts of, so as to form a permanent whole. To put together constituent parts of something in their proper place and order. "Construct" is distinguishable from "maintain," which means to keep up, to keep from change, to preserve.

[4]<u>See</u>  <u>Maintain</u>,  American  Heritage  Dictionary, https://ahdictionary.com/word/search.html?q=maintain.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

machinery, or existing facilities.[5] Indeed, the language of the CBA's clause covering repair and maintenance work supports such a finding, as it strongly suggests that it applies to machinery or equipment, and twice references that the repair or maintenance work might be performed in the "central shop." See Dkt. no. 14-1 at 4.

Despite the fact that the plain language of the CBA appears clear, the Arbitrator may have found some ambiguity, although she did not explicitly say so. See PPG Indus., 587 F.3d at 654 (noting that courts should not second-guess an arbitrator's finding of ambiguity). The Court recognizes that "construing or applying the contract" is generally within the exclusive purview of the Arbitrator. See PPG Indus., 587 F.3d at 652.

Nevertheless, had the Arbitrator found some ambiguity in the contract, she was not at liberty to impose her "own notions of industrial justice." Id. (quoting Misco, 484 U.S. at 38). Rather, she was obligated to look to the "existing common law of the particular plant or industry, for it is an integral part of the

---

[5]See, e.g., Case No. D-971AI-9, Consol-McElroy Coal Co. and UMWA Local Union 1638, District 6, at 11-12 (Dec. 3, 1997) (Nicholas, Arb.) ("On the other hand, repair and maintenance that is work which — by definition — involves repairing existing equipment or servicing machinery or facilities in order to keep them in good working order.") (dkt. no. 18-1 at 96-97).

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

contract." <u>Clinchfield Coal</u>, 720 F.2d at 1368 (quoting <u>Norfolk
Shipbuilding</u>, 671 F.2d at 800).

The Company provided the Arbitrator with numerous arbitral
decisions defining construction work, including several that
specifically concluded installation of roof support systems, such
as the pumpable crib pillars at issue, was construction work, not
repair or maintenance.[6] Some of those decisions also held that the
definition of construction in the coal industry was a matter of res
judicata.[7]  The union provided no contrary precedent, and the
Arbitrator cited none.[8]

---

[6]The list of cases provided by the Company in support is quite
lengthy and need not be fully cited here. Those cases are collected
at dkt. no. 18 at 13-14 n. 3; dkt. no. 18-1 at 1-108; dkt. no. 18-2
at 1-103; dkt. no. 16-2 at 8-54. These decisions are important in
the instant case not only because they discuss the definition of
construction work, but also for their precedential value.

[7]<u>See, e.g.</u>, Case No. D-20001AG-11, ARB No. 98-06-99-0258,
<u>McElroy Coal Co. v. Local Union 1638, District 6</u> (July 17, 2000)
(Harr, Arb.) (finding that definition of construction within
industry was matter of res judicata); Case No. D-881AI-2, ARB No.
84-2-87-146, <u>Greenwich Collieries Co. v. UMWA Local Union 1609,
District 2</u>,(Jan. 15, 1988) (Joseph, Arb.) (finding "arbitral
consensus" that when new items are installed it constitutes
construction).

[8]In point of fact, in a previous arbitration, the Union had
conceded that installation of pumpable crib pillars was
construction work. Dkt. No. 18-1 at 34, 42.

Those past arbitral decisions clearly define the differences between construction and repair and maintenance work. Indeed, for decades arbitrators have concluded that

> [i]n the usual sense, construction work . . . is work which brings something new to the mine which had not existed prior to the performance of the work in question. On the other hand, repair and maintenance that is work which — by definition — involves repairing existing equipment or servicing existing machinery or facilities in order to keep them in good working order. Generally speaking, repair and maintenance work does not involve introducing new material into the mine or the erection or fabrication of facilities which have not previously been part of the mine facilities.

<u>Consol-McElroy Coal Co. v. UMWA Local Union 1638, District 6</u>, Case No. D-971AI-9,(Dec. 3, 1997)(Nicholas, Arb.); <u>see also</u>, <u>Consol -McElroy Coal Co. v. UMWA Local Union 1638, District 6</u>, Case No. D-971AI-8,(Sept. 22, 1997)(Hammer, Arb.) (noting that repair and maintenance generally refers to the upkeep or restoration of equipment and machinery, while construction involves erecting, fabricating or installing mine or mine related facilities).

Several arbitral decisions specifically address whether roof supports are construction work. In <u>Consol-Consol-McElroy Coal Co. v. UMWA Local Union 1638, District 6</u>, Case No. D-971AI-9,(Dec. 3, 1997) (Nicholas, Arb.), for example, Arbitrator Samuel Nicholas held that the installation of steel arches to support the roof of

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

a mine was construction work.  Finding that the steel arches had never been present in the mine prior to their installation, he concluded that their installation constituted construction work. Id.

Arbitrator Nicholas used the same reasoning in another case in which he decided that installation of supplemental roof supports, specifically, "pizza jacks," was construction work rather than maintenance work. Pittsburg & Midway Coal-North River Mine v. UMWA Local Union 1926, District 20, Case No. D-20051AI-5 (Oct. 12, 2005) ("Clearly, and as other arbitrators have said, you cannot repair something into existence." (citing Island Creek Coal Co., Hamilton #2 Mine, 84-23-87-49-ICC at 9 (1997) (Phelan, Arb.))).

Several arbitral decisions specifically address the installation of concrete roof support pillars using collapsible forms hung from the ceiling similar to the pumpable crib bags used by the Company in this case. In one such case, Arbitrator Lynn Wagner found that hanging the collapsible forms was a component of the concrete pillar installation process, and thus  construction work. Consol-Loveridge Mine v. UMWA Local 9909 in District 31, Case No. D-20081AG-1 (Mar. 3, 2008) (Wagner, Arb.) (also noting that "the Arbitrator lacks the contractual authority to ignore such

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

binding ARB decisions and to, in effect, rewrite the Contract to
conform with the Union's position").

Finally, in a decision directly on point, Arbitrator Elliot
Shaller addressed a grievance over the identical pumpable crib bags
installed by the same contractor involved here.[9]  The decision in
The Marshall Cty. Coal Co. v. United Mine Workers of America, Local
1638, Case No. 11-31-15-101 (July 27, 2015) (Shaller, Arb.), began
by acknowledging the "ample arbitral precedent . . . construing the
term ['construction'] in a uniform way." Id. at 18. Arbitrator
Shaller reiterated the definition of construction work as
"involving the erection, fabrication or installation of new mine or
mine-related facilities or additions," and noted in its distinction
from repair and maintenance work. Id.  He also recognized that the
industry's definitions and distinctions were "so well settled that
in a case involving this mine Arbitrator Don Harr ruled that the
prior authority required him to apply the principle of arbitral res
judicata pursuant to ARB 78-24 (February 19, 1980.)" Id. at 14.

---

[9]The facts in the Marshal Cty. Coal case are on all fours with
the facts in this case. Nonetheless, Arbitrator Widgeon refused to
address it because, although the Company submitted the decision to
her on July 27, 2015, she stated that she had closed the record
earlier that same day. Nonetheless, it is persuasive in its
reasoning, and informative in its compilation of prior arbitral
precedent, which was clearly available to the Arbitrator.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

After discussing much of the same precedent cited by the Company in this case, he concluded that the "installation of permanent roof control support in an area in which it did not exist . . . mak[es] it 'construction.'" Id. at 23.

These decisions establish that, under the "industrial common law — the practices of the industry and the shop — [which] is equally a part of the collective bargaining agreement although not expressed in it," the work in question in this case was construction work. United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 581-82 (1960); see also Clinchfield Coal Co. v. District 28, United Mine Workers of America, 556 F.Supp. 522, 530 (D.C.Va. 1983), aff'd, 730 F.2d 1365 (4th Cir. 1983) (citing Warrior & Gulf); Clinchfield Coal Co. v. UMWA, Dist. 28, 567 F. Supp. 1431, 1434 (W.D. Va. 1983), aff'd, 736 F.2d 998 (4th Cir. 1984) (applying principle that past decisions by the Arbitration Review Board under the National Bituminous Coal Wage Agreements constituted part of the common law of the shop).

Certainly, by ignoring this overwhelming precedent, if not the plain language of the CBA, the Arbitrator substituted her own "notion of industrial justice" when she concluded, without any support beyond the Union's argument, that the installation of the

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

pillars was maintenance of the roof rather than construction of something new brought into the mine. Indeed, her conclusion that "there was previously something there: coal" contradicts the prevailing definition in the coal industry that construction work entails "bringing something to the mine that was not there before." Dkt. no. 4 at 4.

Not only does her conclusion misread the arbitral precedent, it is illogical. The defining characteristic of construction work is not whether there was something previously in the location of the construction, but whether the construction "brings something new to the mine which had not existed prior to the performance of the work in question." See Consol-McElroy Coal Co., Case No. D-971AI-9. Moreover, by concluding that work cannot be considered construction where coal previously was located, the Arbitrator effectively rendered all work below the surface to be repair and maintenance work — regardless of its true nature.[10]

---

[10]Nor does the Arbitrator's conclusion that the installation of the pumpable crib pillars was maintenance of the roof make practical sense. One could not credibly argue that an underground pipe is maintaining the earth above it, or that the foundation walls of a building are maintaining the earthen walls surrounding it. Of course, deeming the work maintenance was the only way the Union could have recovered given its concession that  union employees were working no less than five days per week.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

Clearly, the installation of the pumpable crib bags, indeed the installation of the finished support pillars <u>in toto</u>, is construction work.  Not only does this conclusion comport with the overwhelming arbitral precedent and the plain language of the CBA, and is consistent with the Court's objective of "ensur[ing] that commercial arbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties." <u>PPG Indus.</u>, 587 F.3d at 654 (quoting <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 947 (1995)).

Past arbitral decisions, which are "equally a part of the collective bargaining agreement although not expressed in it," remove any doubt that the work in question here was construction work. <u>United Steelworkers of America v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 581-82 (1960).  To allow the Arbitrator to ignore such consistent arbitral precedent would eviscerate the holdings of <u>Warrior & Gulf</u> and <u>Clinchfield</u> that explicitly incorporate such precedent into the CBA. 363 U.S. at 581-82; 556 F.Supp. at 530 Because the arbitral precedent forms the common law of the shop, which necessarily is part of their CBA, the parties should be able to rely on such precedent to guide their actions, which is exactly what the Company did in this case. <u>See</u> <u>id.</u> at 582.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

In conclusion, despite the extremely narrow scope of judicial review of arbitration decisions, the Arbitrator's Decision in this case "fail[ed] to draw its essence from the collective bargaining agreement," instead "reflect[ing] the arbitrator's own notions of right and wrong." <u>Mountaineer</u>, 76 F.3d at 608 (citing <u>Misco</u>, 484 U.S. at 38). Accordingly, the Court **VACATES** the Arbitrator's award **WITH PREJUDICE.**

**B.    The Damages Award in the Arbitrator's Supplemental Decision**

Having concluded that the work at issue was construction work, the Court need not decide whether the amount of damages calculated in the Arbitrator's Supplemental Decision (dkt. no. 4-1) was arbitrary or capricious. Nonetheless, because the Company has presented this argument in its motion for summary judgment, the Court will turn briefly to the issue.

Had the work in question been maintenance work, it would have been under the exclusive jurisdiction of the union employees, and the Arbitrator would have been fully within her authority to award the damages she did. <u>See</u> <u>Brown & Pipkins, LLC v. Service Employees Int'l Union</u>, 2017 WL 280733, at *7 (4th Cir. 2017) (noting that "we give arbitrators wide latitude to formulate remedies" (citing <u>Enterprise Wheel</u>, 363 U.S. at 597)). This includes her finding

that, even though the employees were working five days a week, they would have been able to procure overtime to perform the work. See Consolidation Coal Co. v. United Mine Workers of America Dist. 31, Local Union 1702, 2013 WL 4758601, at *5 (N.D.W.Va. 2013) (noting that it was "within the scope of the arbitrator's authority" to award damages, including finding that the work would have eventually been done by union employees on overtime).

Therefore, to the extent it was necessary for the Arbitrator to calculate an award of damages to the Union, which the Court concludes it was not, the Arbitrator's Supplemental Decision clearly weighed the competing labor time estimates and, regardless of whether there may have been a more accurate formula, her calculation should remain undisturbed. Had the work in question actually been repair or maintenance, the amount of the Arbitrator's award would have drawn its essence from the CBA, and there would be no basis to overturn the calculation. See Baltimore Regional Joint Bd. v. Webster Clothes, Inc., 596 F.2d 95, 98 (4th Cir. 1979) ("[The Arbitrator's] award is legitimate only so long as it draws its essence from the collective bargaining agreement . . . ." (quoting Enterprise Wheel, 363 U.S. at 597)).

**V. CONCLUSION**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 13] AND GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 15]**

For the reasons discussed, the Court **DENIES** the Union's motion for summary judgment (dkt. no. 13), **GRANTS** the Company's motion for summary judgment (dkt. no. 15), **VACATES** the Arbitrator's award, and **ORDERS** this case stricken from the Court's active docket.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record and to enter a separate judgment order.

DATED: February 16, 2017

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE